**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| CITY OF MUKILTEO, WASHINGTON, a non-charter code city; CITY OF EDMONDS, WASHINGTON, a non-charter code city; SAVE OUR COMMUNITIES, a tax exempt organization; MICHAEL MOORE, an individual; VICTOR M. COUPEZ, an individual, *Petitioners*, v. U.S. DEPARTMENT OF TRANSPORTATION; ANTHONY FOXX, Secretary of Transportation;* FEDERAL AVIATION ADMINISTRATION; MICHAEL P. HUERTA, Acting Administrator, FAA; DAVID SUOMI, Regional Administrator, FAA Northwest Mountain Region,** *Respondents*. | No. 13-70385  OPINION |

---

* Anthony Foxx is substituted for Ray LaHood as Secretary of Transportation. *See* Fed. R. App. P. 43(c)(2).

** David Suomi is substituted for Kathryn Vernon as Acting Regional Administrator, FAA Northwest Mountain Region. *See* Fed. R. App. P. 43(c)(2).

On Petition for Review of an Order of the
U.S. Department of Transportation
Federal Aviation Administration

Argued June 18, 2014
Submitted October 9, 2015
Seattle, Washington

Filed March 4, 2016

Before: Diarmuid F. O'Scannlain, Marsha S. Berzon,
and Richard C.  Tallman, Circuit Judges.

Opinion by Judge Tallman

SUMMARY[***]

**Federal Aviation Administration / Environmental Law**

The panel denied a petition for review challenging the
Federal Aviation Administration's ("FAA") decision that no
Environmental Impact Statement was necessary to commence
operating commercial passenger service at Paine Field near
Everett, Washington.

Under the National Environmental Policy Act ("NEPA"),
and its implementing regulations, the FAA was required to
analyze all "reasonably foreseeable" environmental impacts

[***] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

of its decision to open Paine Field to commercial passenger traffic.

The panel held that the scope of the FAA's review was not arbitrary and capricious. The panel further held that the FAA's demand-based flight operation projections for Paine Field were neither arbitrary nor capricious. The panel also rejected the petitioners' contention that the FAA violated 40 C.F.R. § 1508.25, which requires agencies to consider "connected actions" in NEPA documents, and held that it was not arbitrary for the FAA to have included no connected actions in the final Environmental Assessment. The panel rejected petitioners' bias-based arguments, and held that: the FAA's Finding of No Significant Impact was not predetermined by the creation of an optimistic schedule for completing the environmental review or statements favoring commercial service at Paine Field; and the FAA performed its NEPA obligations in good faith and did not prematurely commit resources to opening the terminal.

## COUNSEL

Barbara E. Lichman (argued), Buchalter Nemer, Irvine, California, for Petitioners.

Lane N. McFadden (argued), Attorney, Environment & Natural Resources Division; Robert G. Dreher, Acting Assistant Attorney General, United States Department of Justice, Washington, D.C.; Patricia A. Deem, Office of Regional Counsel, NW Mountain Region, Federal Aviation Administration, Seattle, Washington, for Respondents.

**OPINION**

TALLMAN, Circuit Judge:

Paine Field, located in Snohomish County, Washington, near the city of Everett, was originally constructed in 1936 when it was envisioned to become a major airport serving the communities located north of Seattle. Over the years, it has been used for military purposes (both during and after World War II), and for commercial and general aviation aircraft. Today, the Boeing Company operates its 747 aircraft production factory at Paine Field. There are a host of related commercial businesses which repair and service large airplanes, providing jobs to more than 30,000 people. For that reason, the three existing runways are as long as 9,010 feet.

Paine Field has not, however, become the hub of commercial passenger traffic originally envisioned when it was first built. In 2012, authorization was given to commence service by commercial passenger carriers, starting with permission to build a small two-gate terminal. This case brings to our attention a longstanding public debate over the future of the airfield.

Petitioners challenge the Federal Aviation Administration's (FAA) decision that no Environmental Impact Statement (EIS) is necessary to commence operating commercial passenger service at Paine Field. The FAA made that decision after preparing a draft Environmental Assessment (EA), a less robust form of environmental review. *See Earth Island Inst. v. U.S. Forest Serv.*, 697 F.3d 1010, 1021–22 (9th Cir. 2012). Two and a half years and over 4,000 public comments later, the FAA published a final

EA in September 2012. It found no significant environmental impacts as a result of the FAA's approval. Petitioners claim that the FAA unreasonably restricted the scope of the EA, failed to include connected actions as required, and predetermined an outcome before conducting its review.

We heard argument on this appeal in June of 2014. Shortly thereafter, the parties requested that we stay this action because, for lack of funding, it appeared unlikely that development would proceed. Construction of the passenger terminal was indefinitely delayed after Snohomish County, which owns and operates Paine Field, decided it would not fund the three million dollars needed to construct a building that could handle passengers and their baggage. At the time, no one else was willing to step forward with the money, even though Alaska Airlines, through its subsidiary Horizon Air, and Allegiant Airlines had expressed an interest in providing service in and out of Paine Field if adequate facilities were made available.[1]

After argument, we stayed the proceeding and requested interim status reports every six months. Based on the Respondents' September 2015 undisputed assurances that construction is now imminent, we reinstated this case and now reach the merits of the petition.

We have jurisdiction over this appeal under 49 U.S.C. § 46110(a). We have reviewed the record compiled by the

---

[1] It appears Horizon Air and Allegiant Airlines may no longer be interested in providing service at Paine Field. The government has represented, however, that there is no reason to believe that the new commercial service proposed at Paine Field would involve a different number of flight operations than provided for in the original proposal.

agency in support of its decision. We hold that the scope of the FAA's analysis was not arbitrary and capricious; we recognize that under the enabling act that created it, the FAA is allowed to express a preference for a certain outcome; and we deny the petition for review and uphold the FAA's decision to permit commercial passenger operations to begin at Paine Field once the terminal is built.

I

Petitioners make several arguments about the scope of the FAA's review, essentially claiming that the FAA wrongly failed to analyze what would happen if more airlines followed the first two proposed airlines into Paine Field. Under the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321-4370h, and its implementing regulations, the FAA was required to analyze all "reasonably foreseeable" environmental impacts of its decision to open Paine Field to commercial passenger traffic. *See* 40 C.F.R. § 1508.9 (requiring EAs to analyze environmental impacts of the proposed action); *Id.* at § 1508.8(b) (equating "impact" with "effect" and defining "indirect effects" as those that are "reasonably foreseeable"); *Id.* at § 1508.7 (defining "cumulative impacts" as those which result from the addition of impacts from current and past actions to those of "reasonably foreseeable" future actions). Similarly, the Clean Air Act, 42 U.S.C. §§ 7401-7671, and related federal regulations also require the FAA to analyze "reasonably foreseeable" emissions resulting from its action. *See* 40 C.F.R. § 93.153(b) (requiring agencies to analyze indirect and direct emissions); *Id.* at § 93.152 (defining "indirect emissions" as those that are, among other things, "reasonably foreseeable").

The Supreme Court has emphasized that NEPA only "guarantees a particular procedure, not a particular result" and "a person with standing who is injured by a failure to comply with the NEPA procedure may complain of that failure at the time the failure takes place, for the claim can never get riper." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 737 (1998). Accordingly, when reviewing agency decisions under NEPA, the starting point is the administrative record. *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988), *amended*, 867 F.2d 1244 (9th Cir. 1989). Our task is to determine whether the agency made an arbitrary and capricious decision based on that record. *Id*.

Here, the FAA based its flight operation projections on demand and determined that the only additional, and reasonably foreseeable, flights were those initially proposed by two airlines, amounting to approximately twenty-two operations[2] per day. Those airlines proposed to employ smaller aircraft with a capacity of up to 150 passengers. In contrast, the projections touted by petitioners were based solely on the airport's maximum capacity and do not take into account actual historical demand. While it is true that we do not have the most current projections before us, that data is not necessary to determine whether the FAA based its 2012 decision on reasonable grounds. Further, the ongoing validity of that 2012 decision is unchallenged. The FAA claims that

---

[2] An "[a]ir carrier operation" is defined as a single takeoff or landing. *See* 14 C.F.R. § 139.5. Historical data shows that Paine Field peaked in air carrier operations around the year 2000. That year, Paine saw a total of 213,291 "operations." More recently, operations declined to 117,104 operations per year in 2011. Thus, adding by 2018 approximately 8,340 operations per year from commercial passenger operators will leave the overall airport operations within the level of historic variation.

the 2012 finding of no significant impact (FONSI) is still valid because Propeller Air, Inc., the new outside investor, now plans to build "a terminal facility consistent with that evaluated in the Final EA," and that the number of operations will be similar. Petitioners submitted nothing to challenge that statement.

The final EA evaluated four proposed FAA actions.[3] The FAA must still take at least one of those original four actions—amending Paine Field's Part 139 Certificate—to allow commercial passenger operations. Given that the major action[4] analyzed in the original EA is now likely to occur, and the FAA maintains that it will occur "consistent" with the original plan, we evaluate the 2012 FONSI based on the existing administrative record.

Petitioners do not contest the FAA's claim that the projections regarding the number of air carrier operations in the FONSI are still consistent with the current terminal construction efforts, despite being given the opportunity to do

---

[3] The four actions were: (1) amending Paine Field's Part 139 Certificate to allow it to host commercial passenger service; (2) amending the Part 119 Specifications for Horizon to allow flights in and out of Paine; (3) amending the Part 119 Specifications for Allegiant to allow flights in and out of Paine; and (4) determining whether Snohomish County was eligible to receive a federal grant to defray the cost of expanding and updating the existing terminal. Only action (1) is challenged here.

[4] According to Petitioners, this, and the construction of a new terminal, are the FAA actions that they really seek to challenge. In a letter submitted to us on May 20, 2014, the Petitioners said the "cause of the harm that Petitioners allege and from which they require relief" is the FAA's "plans to turn Paine Field into a commercial airport, and expand its facilities to accommodate commercial service," rather than the change in Horizon's and Allegiant's Part 119 Specifications.

so.  Given that we are to defer to the FAA "especially in areas of agency expertise such as aviation forecasting," the FAA's demand-based projections of approximately 8,340 operations per year in 2018, were not arbitrary and capricious.[5]  *Nat'l Parks & Conservation Ass'n v. U.S. Dep't of Transp.*, 222 F.3d 677, 682 (9th Cir. 2000).  We decline to apply the less deferential standard advanced by Petitioners because this is a factual determination dependent on agency expertise rather than a legal determination.  *See San Luis Obispo Mothers for Peace v. Nuclear Regulatory Comm'n*, 449 F.3d 1016, 1028 (9th Cir. 2006).

We also reject Petitioners' argument that amending Paine Field's Part 139 Certificate to allow commercial passenger operations means that Paine Field "must allow access by all aircraft so requesting" in the future.  Petitioners have provided no support for this come one, come all theory and instead rely on statutory provisions that limit the ability to take away airport access once access has been granted to a particular airline.  *See* 49 U.S.C. § 47524(c)(1) (providing limits on new airport access restrictions); 49 U.S.C. § 41713(b)(1) (preempting state restrictions on access).  The statutes cited by the Petitioners only go into effect after access has been authorized—meaning that the airport is open to commercial operations generally (via the airport's Part 139 Certificate) and the airline specifically has authority to conduct operations at that airport (via the airline's Part 119 Specifications).  Thus, our decision today does not open the floodgates because any future airline must still get an amendment to its Part 119 Specifications in order to operate

---

[5] These demand-based projections were actually quite close to the maximum terminal capacity projections advanced by Petitioners, which predicted 8,760 operations per year by 2018.

out of Paine Field. The FAA, therefore, reasonably based the EA on the number of operations Horizon and Allegiant intended to carry out, not on the speculative number of operations that could someday be carried out at Paine Field if other airlines also seek an amendment to their Part 119 Specifications.

Given the existing administrative record, we hold that the FAA's demand-based projections were neither arbitrary nor capricious.

## II

Petitioners next argue that the FAA violated 40 C.F.R. § 1508.25, which requires agencies to consider "connected actions" in NEPA documents. Connected actions are those that are interdependent or automatically triggered by the proposed action. *See* 40 C.F.R. § 1508.25. The FAA determined that there were no connected actions for this project, and Petitioners have failed to provide anything more than mere speculation that the FAA's actions now will lead to more aircraft activity at Paine Field in the future than covered in the EA. Thus, it was not arbitrary for the FAA to have included no connected actions in the final EA.

## III

Petitioners also argue that the FAA decided what the result would be before performing the EA for two reasons: (1) the FAA made statements favoring passenger service at Paine Field; and (2) the FAA gave a schedule to the consulting firm that prepared the EA which included the date on which a FONSI could issue. Petitioners argue this schedule and the FAA's statements show that the FAA

decided to issue a FONSI before even starting the environmental review process. We reject both of these bias-based arguments.

Petitioners' first argument, that the FAA favored commercial service, is easily rejected because NEPA does not prohibit agencies from having or expressing a favored outcome. *Metcalf v. Daley*, 214 F.3d 1135, 1142 (9th Cir. 2000). Agencies are required only to conduct the required environmental review "objectively and in good faith," rather than as "subterfuge to rationalize a decision already made." *Id.* at 1142. Indeed, the enabling legislation that created the FAA includes an express congressional directive that the agency shall promote and encourage the development of commercial aviation throughout the United States. *See* Federal Aviation Act of 1958, Pub. L. No. 85-726, §§ 102-103, 72 Stat. 731, 740 (later recodified and repealed) (explaining that the FAA is charged with "[t]he promotion, encouragement, and development of civil aeronautics"). The FAA acted well within the bounds of NEPA by advocating for commercial service at Paine Field.

Petitioners' second argument, based on the FAA giving the EA contractor a schedule which included the date a FONSI could issue, is also without merit. As the FAA points out, approving a schedule which included the date a FONSI *could* issue did not obligate the FAA to reach a Finding of No Significant Impact. The FAA simply identified its preferred outcome and laid out an optimistic timetable for achieving that outcome. This is consistent with regulations that actually encourage the FAA to identify a preferred alternative and encourage the FAA to set time limits during the environmental review process. *See* 40 C.F.R. § 1501.8

(encouraging time limits); 40 C.F.R. § 1502.14(e) (encouraging listing a preferred alternative).

As the FONSI at issue in this case states, the FAA did a "careful and thorough" review of the final EA before issuing its finding. Because the FAA reserved the "absolute right" to determine whether a FONSI would issue or not, creating this tentative schedule did not violate NEPA. *See Friends of Southeast's Future v. Morrison*, 153 F.3d 1059, 1063–65 (9th Cir. 1998) (holding that tentative timber cutting schedule released before EIS did not violate NEPA).

In short, the FAA's Finding of No Significant Impact was not predetermined by the creation of an optimistic schedule for completing the environmental review or statements favoring commercial service at Paine Field. The FAA performed its NEPA obligations in good faith and did not prematurely commit resources to opening the terminal. The Petitioners' bias arguments fail.

IV

We emphasize that we base our decision today on the current administrative record. So far as that record shows, the only changes in the status quo since the FAA issued its 2012 decision is that a private entity, Propeller Air, Inc., has now stepped forward to pay for building the small passenger terminal which the FAA has previously approved, and that the airlines likely to use the terminal may change. These changes are not enough to warrant a supplemental EA, as neither of these changes, in themselves, will necessarily alter the environmental impact. *See Great Old Broads for Wilderness v. Kimbell*, 709 F.3d 836, 854 (9th Cir. 2013) (holding that supplementation is not required when the final

project is a "minor variation" of one of the alternatives discussed in the NEPA document); *see also* FAA Order 1050.1E (Change One) ¶ 402b(1) (requiring the FAA to supplement an EA only if "significant changes" have been made to the project).

Practical concerns also weigh against requiring the FAA to reevaluate or supplement the EA at this time.  As previously discussed, any airline wishing to fly out of Paine Field, besides Horizon or Allegiant, needs to request access from the FAA and an amendment to their Part 119 Specifications, potentially triggering another round of environmental assessment subject to scrutiny under NEPA. We do not prejudice Petitioners by deciding this case on the current record because if they want post-2012 facts reviewed, the Petitioners can simply challenge the FAA's future actions when further expansion is sought.  But on this record we cannot say the FAA's decision to permit limited commercial passenger operations to begin at Paine Field without a full environmental impact statement was arbitrary and capricious.

**PETITION FOR REVIEW DENIED.**